**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 15, 2013

Lyle W. Cayce
Clerk

No. 11-31011
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MAURICE A. BROWN,

Defendant-Appellant

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:10-CR-100-1

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

The FBI conducted an undercover investigation of St. Gabriel, Louisiana Mayor George Grace. As part of that investigation, William Myles, a paid cooperating witness, posed as a corrupt businessman marketing a fictional trash can cleaning product: the "Cifer 5000." After accepting bribes from Myles, Grace introduced Myles to his "A-Team" of mayors. One of the mayors was Defendant-Appellant Maurice Brown.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

After a months-long sting operation, the government charged Brown in a twenty-count indictment with violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), engaging in mail and wire fraud, and using an interstate facility in aid of racketeering. The government introduced evidence at trial that Brown, as mayor of White Castle, Louisiana, promoted in an official capacity the Cifer 5000 at the behest of Myles and undercover FBI Special Agent Darin McAllister ("the businessmen"). The evidence showed that, in exchange for promoting Cifer 5000, Brown solicited and received New Orleans Saints tickets and hotel rooms from the businessmen. The evidence also showed that Brown obtained for the businessmen confidential law enforcement information.

At the close of trial, the district court gave the Fifth Circuit pattern jury instruction on entrapment. The district court also gave the pattern instruction that the jury should treat each count separately, and a supplemental instruction, derived from *United States v. Wells*, 506 F.2d 924, 925 (5th Cir. 1975): "You must determine whether or not the defense of entrapment is applicable to any or all counts. Each count must be considered separately. Your verdicts may be the same or they may be different. Each verdict must be agreed to by all members of the jury." The district court denied Brown's request for a special instruction providing, in effect, that "once entrapped, always entrapped."

The jury returned a particularized verdict, finding Brown guilty on all but two counts. The district court sentenced Brown to 120 months' imprisonment, below the guidelines range of 235 to 293 months.

Brown appeals, challenging the sufficiency of the government's evidence rebutting his entrapment defense, the district court's decision not to give Brown's requested entrapment instruction, and the district court's decision not to allow Brown to impeach McAllister on the basis of his out-of-court statements.

*The Entrapment Evidence*

"Entrapment occurs when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the

disposition to commit the alleged offense and induce its commission in order that they may prosecute." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000) (internal quotation marks omitted). "Government inducement consists of the creative activity of law enforcement officials in spurring an individual to crime." *United States v. Gutierrez*, 343 F.3d 415, 420 (5th Cir. 2003) (internal quotation marks omitted). "It is proper (i.e., not an 'inducement') for the government to use a 'sting [operation],' at least where it amounts to providing a defendant with an 'opportunity' to commit a crime." *Id.* (internal quotation marks omitted). "Predisposition focuses on whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *United States v. Theagene*, 565 F.3d 911, 919 (5th Cir. 2009). "Evidence of predisposition can include, for example, active, enthusiastic participation or demonstrated expertise in the criminal endeavor." *Id.* "[A] defendant's ready and willing participation in government-solicited criminal activity, standing alone, is sufficient to prove predisposition." *United States v. Reyes*, 239 F.3d 722, 739 (5th Cir. 2001).

"When a jury, which was fully charged on entrapment, rejects the defendant's entrapment defense, the applicable standard of review is the same which applies to sufficiency of the evidence." *Id.* (internal quotation marks omitted). "[W]e must accept every fact in the light most favorable to the jury's guilty verdict, and we may reverse only if no rational jury could have found beyond a reasonable doubt either (1) lack of government inducement or (2) predisposition to commit the charged crime." *Id.*

Here, there was evidence sufficient to support the jury's verdict because a reasonable juror could have found that the government rebutted Brown's entrapment defense.

First, there was sufficient evidence that the government did not induce Brown to commit the offense because, as this court reasoned in *Gutierrez*, the sting operation in this case did not "involve either threatening or harassing

conduct or actions designed specifically to take advantage of the defendant's weaknesses." *Gutierrez*, 343 F.3d at 420. Rather, the sting operation "simply provided the opportunity" to commit a crime, *see id*. at 419—an opportunity Brown repeatedly seized. For example, Brown requested from Myles six tickets to a Saints game in exchange for promising to "take care of [Myles] on the other end." Brown also sought Saints tickets, New Orleans Hornets tickets, and hotel rooms in exchange for promising to promote Cifer 5000, and for providing to Myles confidential law enforcement information.

Second, there also was sufficient evidence that Brown was predisposed to commit the offense because, as discussed above, by initiating many of the bribes, Brown was a "ready and willing participa[nt]." *Reyes*, 239 F.3d at 739. Further, by accepting bribes, and by doing so with minimal hesitation, Brown was an "active, enthusiastic participa[nt] . . . in the crim[e]." *Theagene*, 565 F.3d at 919.

Brown argues that the government induced this behavior by "dangling a fictitious product that would benefit his community," by "continuing to offer sporting event tickets" that "were initially free, but later came with a condition that [he] perform some official act," and by misrepresenting facts as part of the undercover investigation. As discussed above, however, a sting operation generally is proper unless there is "threatening or harassing conduct or actions designed specifically to take advantage of the defendant's weaknesses." *Gutierrez*, 343 F.3d at 420. Conduct such as "dangling a fictitious product" merely amounts to the "[a]rtifice and strategem [that] may be employed to catch those engaged in criminal enterprises." *Sorrells v. United States*, 287 U.S. 435, 441 (1932).

Brown also argues that there was "no evidence that [he] was inclined to engage in the crimes for which he was charged before his initial exposure to government agents," and that there was "no evidence that [he] engaged in similar prior illegal acts." As discussed above, however, the question is not whether Brown was "inclined to engage in the crimes," or whether he had

engaged in "prior illegal acts," but whether he "availed himself of the opportunity to perpetrate the crime." *Theagene*, 565 F.3d at 919. Brown's requests for bribes shows that there was evidence to support that he was a "ready and willing participa[nt]." *Reyes*, 239 F.3d at 739.

Brown adds that Grace's comment that the mayors would "do it"—that is, promote Cifer 5000—"straight up now" showed that "Brown would not cross the line." As the government notes, however, Grace's "do it straight up" comment appears to refer to a different mayor. Further, taken in context, a reasonable juror could infer that the full comment—"these guys will do it straight up now, basically"— does not indicate that the mayors would promote Cifer 5000 without bribes. For example, after the "straight up" comment, Grace told Myles that the mayors would "[p]robably [want] cash" for their help in promoting Cifer 5000.

*The Entrapment Instruction*

We review a district court's refusal to give a defendant's proposed jury instruction for abuse of discretion. *United States v. Hale*, 685 F.3d 522, 541 (5th Cir. 2012). "A district court abuses its discretion in denying a requested instruction only if such instruction (1) is a substantively correct statement of the law, (2) is not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense." *United States v. Porter*, 542 F.3d 1088, 1093 (5th Cir. 2008).

Here, the district court did not abuse its discretion in refusing to give the "once entrapped, always entrapped" proposed instruction because the instruction was an incorrect statement of the law. This court rejected a similar "once entrapped, always entrapped" theory in *United States v. Morris*, holding that a jury "should consider each [entrapment] count separately, allowing it to consider whether Defendant was guilty of any or all of the offenses charged." 974 F.2d 587, 588 (5th Cir. 1992); *see also Wells*, 506 F.2d at 926 ("Unless the evidence established as a matter of law that there was a 'course of conduct,' it would have

been error to charge, as the defense requested at trial, that [the defendant] was either guilty of all or innocent of all."). In addition, as discussed above, a reasonable juror could have rejected Brown's argument that the government entrapped him into taking the first bribe. *See Reyes*, 239 F.3d at 739.

*Hearsay*

We review a district court's evidentiary rulings for abuse of discretion. *See Hale*, 685 F.3d at 538. When a district court allows into evidence a hearsay statement, the opposing party may impeach the hearsay declarant. Fed. R. Evid. 806; *see also United States v. Graham*, 858 F.2d 986, 990 (5th Cir. 1988). An out-of-court statement is hearsay only if it is offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c).

Here, the district court did not abuse its discretion by not allowing Brown to impeach undercover Special Agent McAllister[1] because McAllister's false business scheme statements were not hearsay. The government introduced audio recordings between Grace and Brown and McAllister that contained McAllister's sting "strategem" statements. McAllister's statements on the audio recordings—for example, boasting that he could "grease paths"—were not hearsay because they were not offered to prove the truth of the matter asserted. As the government observes, "in keeping with his undercover role, virtually all of McAllister's statements to [Brown] were false." Further, the government offered McAllister's statements to give context and background for statements made by Brown and Grace—not to prove their truth. *See United States v. Gutierrez-Chavez*, 842 F.2d 77, 81 (5th Cir. 1988) (finding that recorded statements offered for a similar purpose "were not introduced to prove their truth, but rather to prove only that they were uttered"). Finally, the district

---

[1] A federal grand jury indicted McAllister for offenses related to his personal finances. The district court, granting a motion in limine by the government, prohibited Brown from mentioning McAllister's pending criminal charges at trial on the basis that McAllister would not appear as a government witness. As a result, McAllister did not testify.

court instructed the jury not to consider "the truthfulness" of McAllister's statements.[2]

Accordingly, we AFFIRM judgment against Brown.

---

[2] Because McAllister's statements were not hearsay, Brown's argument that his inability to impeach McAllister impacted his rights under the Confrontation Clause fails. *See United States v. Moody*, 903 F.2d 321, 329 (5th Cir. 1990).